UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SHIVA STEIN, Individually and on Behalf of All Others Similarly Situated, | ) ) | Civil Action No. 1:20-cv-02030-JPB |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| AARON'S INC., et al., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) ) | |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS LEAD PLAINTIFF'S COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................1

II.   STATEMENT OF FACTS .....................................................................2

III.  ARGUMENT ........................................................................................6

      A.    Plaintiff Properly Pleads Falsity............................................7

            1.    Aaron's and Progressive's Financial Performance....................8

            2.    AB's Return to "Sustainable Growth"......................................10

            3.    Compliance and Customer Service Statements ........................12

      B.    Defendants' Duty to Disclose Material Omitted Information ............13

      C.    The Misstatements and Omissions Were Material, Not Puffery
           or Inactionable Opinions ...................................................................14

      D.    The Safe Harbor Affords No Protection Here.....................................18

      E.    Plaintiff Adequately Pleads Defendants' Scienter .............................20

IV.   CONCLUSION....................................................................................25

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abrams v. MiMedx Grp., Inc.*,
37 F. Supp. 3d 1271 (N.D. Ga. 2014)...........................................................8, 24

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013)..................................................................................14

*Bach v. Amedisys, Inc.*,
No. 10-00395-BAJ-RLB, 2016 WL 4443177
(M.D. La. Aug. 19, 2016) ...........................................................................10

*Bellocco v. Curd*,
No. 802CV1141T27TBM, 2005 WL 2675022
(M.D. Fla. Oct. 20, 2005) ...........................................................................17

*Bryant v. Avado Brands, Inc.*,
187 F.3d 1271 (11th Cir. 1999) ..................................................................16

*Carvelli v. Ocwen Fin. Corp.*,
934 F.3d 1307 (11th Cir. 2019) .............................................................16, 18

*City of Sunrise Gen. Emps.' Ret. Plan v. FleetCor Tech. Inc.*,
No. 1:17-CV-2207-LMM, 2018 WL 4293143
(N.D. Ga. May 15, 2018).................................................................10, 14, 24

*Eastwood Enters., LLC v. Farha*,
No. 8:07-cv-1940-T-33EAJ, 2009 WL 3157668
(M.D. Fla. Sept. 28, 2009) ..........................................................................23

*Emps. Ret. Sys. of the P.R. Elec. Power Auth. v. Conduent Inc.*,
No. 19-8237 (SDW) (SCM), 2020 WL 3026536
(D.N.J. June 5, 2020) .................................................................................11

*Epstein v. World Acceptance Corp.*,
203 F. Supp. 3d 655 (D.S.C. 2016) ..............................................................23

*FindWhat Inv'r Grp. v. FindWhat.com*,
658 F.3d 1282 (11th Cir. 2011) .............................................................*passim*

**Page**

*Freudenberg v. E\*Trade Fin. Corp.*,
712 F. Supp. 2d 171 (S.D.N.Y. 2010) ....................................................11, 15, 24

*Ganino v. Citizens Utils. Co.*,
228 F.3d 154 (2d Cir. 2000) ...............................................................17

*Garfield v. NDC Health Corp.*,
466 F.3d 1255 (11th Cir. 2006) ........................................................7, 23

*Grand Lodge of Pa. v. Peters*,
550 F. Supp. 2d 1363 (M.D. Fla. 2008)...............................................25

*In re Bear Stearns Mortg. Pass-Through Certificates Litig.*,
851 F. Supp. 2d 746 (S.D.N.Y. 2012) ................................................13

*In re BellSouth Corp. Sec. Litig.*,
355 F. Supp. 2d 1350 (N.D. Ga. 2005)...............................................15

*In re Carter's, Inc. Sec. Litig.*,
No. 1:08-CV-02940-AT, 2012 WL 3715241
(N.D. Ga. Aug. 28, 2012) ..................................................................12

*In re Clarus Corp. Sec. Litig.*,
201 F. Supp. 2d 1244 (N.D. Ga. 2002)...............................................22

*In re Ebix, Inc. Sec. Litig.*,
898 F. Supp. 2d 1325 (N.D. Ga. 2012)...............................................13

*In re Enzymotec Sec. Litig.*,
No. 14-5556 (JLL) (MAH), 2015 WL 8784065
(D.N.J. Dec. 15, 2015) ......................................................................11

*In re Faro Tech. Sec. Litig.*,
534 F. Supp. 2d 1248 (M.D. Fla. 2007)..............................................25

*In re Flowers Foods, Inc. Sec. Litig.*,
No. 7:16-CV-222 (WLS), 2018 WL 1558558
(M.D. Ga. Mar. 23, 2018) ............................................................*passim*

**Page**

*In re Freidman's, Inc. Sec. Litig.*,
  385 F. Supp. 2d 1345 (N.D. Ga. 2005)..............................................................22

*In re HD Supply Holdings, Inc. Sec. Litig.*,
  341 F. Supp. 3d 1342 (N.D. Ga. 2018)........................................................19, 22

*In re Henry Schein, Inc. Sec. Litig.*,
  No. 18-CV-01428 (MKB), 2019 WL 8638851
  (E.D.N.Y. Sept. 27, 2019)...............................................................................11

*In re Immucor Inc. Sec. Litig.*,
  No. 1:05-CV-2276-WSD, 2006 WL 3000133
  (N.D. Ga. Oct. 4, 2006)...................................................................................21

*In re Mirant Corp. Sec. Litig.*,
  No. 1:02-CV-1467-RWS, 2009 WL 48188 (N.D. Ga. Jan. 7, 2009) ...................9

*In re Paincare Holdings Sec. Litig.*,
  541 F. Supp. 2d 1283 (M.D. Fla. 2008)............................................................12

*In re Premiere Tech. Inc. Sec. Litig.*,
  No. 1:98-CV-1804-JOF, 2000 WL 33231639
  (N.D. Ga. Dec. 8, 2000) ...................................................................................19

*In re Salix Pharms., Ltd.*,
  No. 14-CV-8925 (KMW), 2016 WL 1629341
  (S.D.N.Y. Apr. 22, 2016)..................................................................................20

*In re Sci.-Atlanta, Inc. Sec. Litig.*,
  239 F. Supp. 2d 1351 (N.D. Ga. 2002),
  *aff'd sub nom.* 374 F.3d 1015 (11th Cir. 2004) ...............................................15

*In re Sensormatic Elec. Corp. Sec. Litig.*,
  No. 018346CIVHURLEY, 2002 WL 1352427
  (S.D. Fla. June 10, 2002) .................................................................................22

*In re Sunterra Corp. Sec. Litig.*,
  199 F. Supp. 2d 1308 (M.D. Fla. 2002)............................................................25

**Page**

*In re Towne Servs., Inc. Sec. Litig.*,
184 F. Supp. 2d 1308 (N.D. Ga. 2001)..........................................................12, 19

*In re Unicapital Corp. Sec. Litig.*,
149 F. Supp. 2d 1353 (S.D. Fla. 2001) .............................................................17

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
No. 15-7658 (MAS) (LHG), 2017 WL 1658822
(D.N.J. Apr. 28, 2017) ......................................................................................12

*Inst'l. Inv'rs Grp. v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009) .............................................................................22

*Jiangchen v. Rentech, Inc.*,
No. CV 17-1490-GW(FFMx), 2017 WL 10363990
(C.D. Cal. Nov. 20, 2017)....................................................................................7

*KBC Asset Mgmt. NV v. 3D Sys. Corp.*,
No. 0:15-CV-02393-MGL, 2016 WL 3981236
(D.S.C. July 25, 2016) ......................................................................................11

*Keippel v. Health Ins. Innovations, Inc.*,
No. 8:19-cv-421-02CPT, 2019 WL 5698329
(M.D. Fla. Nov. 4, 2019) ..............................................................................13, 16

*Local 703 v. Regions Fin Corp.*,
No. CV: 10-2847-IPJ, 2011 WL 12855820
(N.D. Ala. June 7, 2011).....................................................................................23

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) ............................................................................12

*Luczak v. Nat'l Beverage Corp.*,
812 F. App'x 915 (11th Cir. 2020).........................................................14, 15, 21

*Makor Issues & Rights, Ltd., Tellabs Inc.*,
513 F.3d 702, 711 (7th Cir. 2008) ....................................................................23

**Page**

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011)................................................................................*passim*

*MAZ Partners LP v. First Choice Healthcare Sols., Inc.*,
    No. 6:19-cv-619-Orl-40LRH, 2020 WL 1072582
    (M.D. Fla. Feb. 14, 2020) ................................................................13

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ........................................................24

*Mogensen v. Body Central Corp.*,
    15 F. Supp. 3d 1191 (M.D. Fla. 2014).......................................21, 24

*Monroe Cnty. Emps. Ret. Sys. v. Southern Co.*,
    No. 1:17-CV-241-MHC, 2018 WL 1558577
    (N.D. Ga. Mar. 29, 2018)...........................................................21, 25

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark*,
    367 F. Supp. 3d 16 (S.D.N.Y. 2019) ...............................................23

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015)..........................................................9, 14, 17, 18

*Owl Creek I, L.P. v. Ocwen Fin. Corp.*,
    No. 18-80506-CIV-BLOOM/REINHART, 2018 WL 4844019
    (S.D. Fla. Oct. 4, 2018)..............................................................16, 18

*Plumbers & Pipefitters Nat'l. Pension Fund v. Davis*,
    No. 1:16-cv-3591-GHW, 2020 WL 1877821
    (S.D.N.Y. Apr. 14, 2020)...............................................................9, 11

*Primavera Inv'rs v. Liquidmetal Tech., Inc.*,
    403 F. Supp. 2d 1151 (M.D. Fla. 2005).......................................19, 22

*Rosky v. Farha*,
    No. 8:07-cv-1952–T–26MAP, 2009 WL 3853592
    (M.D. Fla. Mar. 30, 2009).................................................................24

**Page**

*SEC v. Adler*,
   137 F.3d 1325 (11th Cir. 1998) ........................................................................24

*SEC v. City of Miami*,
   988 F. Supp. 2d 1343 (S.D. Fla. 2013) .............................................................16

*SEC v. Merch. Capital, LLC*,
   483 F.3d 747 (11th Cir. 2007) ...................................................................19, 20

*SEC v. Revolutions Med. Corp.*,
   No. 1:12-CV-3298-LMM, 2015 WL 11199068
   (N.D. Ga. Apr. 3, 2015) ...................................................................................19

*Shah v. Zimmer Biomet Holdings, Inc.*,
   No. 3:16-cv-815-PPS-MGG, 2019 WL 762510
   (N.D. Ind. Feb. 20, 2019) .................................................................................13

*Silverman v. Motorola, Inc.*,
   798 F. Supp. 2d 954 (N.D. Ill. 2011) ...............................................................15

*Steiner v. MedQuist Inc.*,
   No. 04-5487 (JBS), 2006 WL 2827740 (D.N.J. Sept. 29, 2006) ......................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)..............................................................................6, 20, 24

*Thorpe v. Walter Inv. Mgmt., Corp.*,
   111 F. Supp. 3d 1336 (S.D. Fla. 2015) ............................................................22

*United States v. Levy*,
   379 F.3d 1241 (11th Cir. 2004) ..........................................................................7

*Utesch v. Lannett Co.*,
   385 F. Supp. 3d 408 (E.D. Pa. 2019).................................................................23

*Veal v. LendingClub Corp.*,
   423 F. Supp. 3d 785 (N.D. Cal. 2019)...............................................................21

**Page**

## STATUTES, RULES, AND REGULATIONS

15 U.S.C.
  §78j(b)....................................................................................................7
  §78u-5(c)(2)(B)(ii)..............................................................................20

Federal Rules of Civil Procedure
  Rule 9(b) ..............................................................................................7
  Rule 12(b)(6)........................................................................................6

17 CFR
  §240.10b-5 .....................................................................................7, 24

Lead Plaintiff Laborers Pension Trust Fund for Northern Nevada respectfully submits this memorandum of law in opposition to Defendants' Motion to Dismiss Lead Plaintiff's Complaint [ECF No. 51] ("Mem.").[1]

## I.    INTRODUCTION

This securities fraud action stems from Defendants' false or misleading statements and omissions related to Aaron's two ***undisputed*** schemes at its largest business segments during the Class Period. Aaron's is a leading rent-to-own ("RTO") company that targets vulnerable credit-challenged customers. To combat decreased market demand for its "core" in-store offerings at its AB segment, and increased competition, Defendants engaged in undisclosed: (i) anti-competitive swap agreements at AB; and (ii) deceptive and predatory marketing at Aaron's Progressive segment, both in violation of the FTC Act.

During the Class Period, Defendants repeatedly misled investors by touting Aaron's "record" growth while concealing that it was only accomplished through Defendants' fraudulent practices; falsely distinguishing Aaron's from its competition via supposed "champion compliance" with laws and a consumer-centric business model; and assuring AB's return to "sustainable growth." Based on

---

[1]    All "¶__," "§__," or "Ex. __" references are to the Complaint [ECF No. 40] unless noted otherwise. All defined terms have the same meaning as in the Complaint.

Defendants' fraud, Aaron's stock price soared, and Defendants pocketed over $13 million in insider sales. When the truth began to emerge through a series of partial disclosures, including FTC Civil Investigative Demands ("CID"), an FTC settlement, and AB's continued poor financial results, the market was stunned. Aaron's stock price plunged as the artificial inflation was removed, and investors suffered damages.

Faced with the Complaint's well-pled allegations, Defendants challenge only falsity and scienter and improperly isolate Plaintiff's allegations to offer a counter-narrative of their own version of events. As demonstrated below, Defendants are wrong on all accounts, and their motion should be denied.

## II.    STATEMENT OF FACTS

Aaron's is a leading RTO company that offers household products to "credit-challenged" customers via recurring rental contracts. ¶37. Aaron's is entirely dependent upon its "core" legacy AB segment, which provides products through Aaron's stores and Aarons.com, and its virtual Progressive segment, collectively accounting for 98% of Aaron's revenues. ¶¶48-55. Because Aaron's vulnerable consumers are "critical" to its revenue stream, the Company has faced increased FTC scrutiny. ¶¶45-47.

Aaron's enjoyed tremendous growth through its brick and mortar stores until 2013, when consumer preferences shifted towards virtual offerings, and increased

competition caused Aaron's "core" segment's profitability to decline. ¶¶56-62. In response, in 2014, Aaron's revamped its management, acquired Progressive, and initiated transformative efforts and "evaluation[s]" of its diminishing "core." *Id*.

Unbeknownst to investors, Aaron's also engaged in two improper and illegal schemes at AB and Progressive designed to minimize competition, improperly inflate Progressive's revenues, and conceal AB's inevitable decline. ¶21; Ex. A at 7, Ex. B at 2. *First*, starting in June 2015 and continuing throughout the Class Period, Aaron's entered into anti-competitive swap agreements with its competitors at AB to purposefully suppress competition (and the numerous benefits it provided to Aaron's financially strapped customers). ¶¶62-68; Ex. C. In short, Aaron's would sell a closing store's customer contracts to a competitor in exchange for Aaron's agreement to not open any stores in the geographic location where the contract was sold, and vice versa. *Id*. *Second*, starting in 2016 and continuing throughout the Class Period, Aaron's engaged in deceptive and predatory conduct to improperly boost Progressive's revenues by intentionally misrepresenting to its customers the exorbitant prices they paid through Progressive's RTO plans. ¶¶69-78; Ex. E. Such conduct propelled Progressive's, and consequently Aaron's, growth. ¶¶79-82.

The Class Period begins on February 15, 2018, when the illicit practices were well under way. ¶¶82-85. Defendants had internally received thousands of consumer

complaints related to Progressive's predatory and deceptive sales practices, and spent four years on futile efforts to revive AB's profitability. *Id.*; Ex. E. Despite this, they consistently boasted about Aaron's and Progressive's "record revenues" and increasing financial metrics while failing to disclose that revenues were inflated due to Aaron's unsustainable deceptive practices that ultimately subjected Aaron's to further regulatory scrutiny and penalties. ¶¶83, 86, 117, 148. Defendants also falsely attributed AB's closure of 270 underperforming stores to Aaron's business decision to "align with marketplace demand" and "right size [its] footprint" when, in truth, the closures were orchestrated by its swap agreements with competitors. ¶¶89, 99, 119. Defendants further gave investors the false impression that despite AB's declines, "transformational" initiatives would drive AB "back to sustainable growth." ¶¶83, 86, 98. This was false, because after four years, two management changes, numerous initiatives, and even anti-competitive conduct, AB's growth was still declining. ¶81.

Given known competition and FTC scrutiny, Defendants "distinguish[ed]" Aaron's from competitors by falsely touting its "strategic" plan, focused on "[c]hampion compliance" with "all laws and regulations" and "superior" customer service. ¶¶43, 83, 87, 127, 129-130. At the same time, Defendants concealed the operation of both fraudulent schemes, which intentionally minimized price and

- 4 -

quality competition and deceived consumers into paying undisclosed and exorbitant prices. ¶¶69, 83, 278. Defendants' ongoing misstatements resulted in Aaron's stock price reaching $78 per share and earning analyst praise. ¶¶104, 124, 142, 202, 263. Taking advantage of Aaron's artificially inflated price caused by Defendants' fraud the Individual Defendants sold $13 million in Aaron's stock. ¶¶304-315.

On July 26, 2018, Aaron's revealed it received FTC CIDs related to whether Progressive's product "disclosures" violated the FTC Act. ¶¶14, 92. But Defendants lied to investors, claiming Aaron's "compli[ed]" with the Act. *Id*. Regardless, Aaron's stock fell 11% per share, to close at $43.47 on July 27, 2018. ¶94. Then, on October 24, 2018, Aaron's reported a 12% increase in operating expenses for 3Q18 due to expenses surrounding the CIDs, resulting in an 8.7% decline in Aaron's stock on October 25, 2018. ¶¶96-97. On April 25, 2019, Aaron's announced receipt of another CID probing whether AB's swap agreements violated the FTC Act. ¶100.

On November 4, 2019, Aaron's revealed that the FTC commenced an "enforcement action" against Progressive for its improper disclosure practices and that Aaron's entered into a Consent Decree with the FTC forbidding the anti-competitive swap agreements. ¶105. In response, Aaron's stock price fell 11.38%, to close at $65.46 per share on November 5, 2019. ¶106.

The Class Period ends when Defendants announced a $175 million FTC

settlement stemming from Progressive's predatory practices, $15 million in required compliance measures, poor 4Q19 and FY19 results at AB due to decreased demand, and 2020 guidance well below expectations. ¶¶107-108. Aaron's also reported a 273.6% decline in net earnings for the quarter, from the prior year's period, and an EPS decrease of 279.8%. ¶108. Robinson conceded AB's initiatives were "tough" to manage, and that Aaron's would take a more "prudent approach" toward its willingness to invest in AB. *Id*. On this news, Aaron's stock price tumbled over 19%, to close at $45.45 per share on February 20, 2020. ¶109. Analysts blamed the EPS loss on the FTC settlement, and chastised Aaron's for poorly "communicating the issues with the core business." ¶110.

## III. ARGUMENT

Under Rule 12(b)(6), the Court must consider the Complaint in its entirety, "accept all factual allegations . . . as true" and construe all reasonable inferences in Plaintiff's favor. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 309-10, 322 (2007).[2] Defendants challenge only the falsity and scienter elements of Plaintiff's claim, and have thus waived any challenges to the remaining elements (and are prohibited from raising them, or any other new challenges, in their reply

---

[2]   Citations, internal quotations, and footnotes omitted and emphasis added unless noted otherwise.

brief). *United States v. Levy*, 379 F.3d 1241, 1243 (11th Cir. 2004).[3]

### A.    Plaintiff Properly Pleads Falsity

Rule 10b-5 prohibits not only false statements but also "omissions of material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1305 (11th Cir. 2011). Under the PSLRA and Rule 9(b), a complaint adequately pleads falsity if it specifies "the who, what, when[,] where, and how" of defendant's statements.[4] *Garfield v. NDC Health Corp*., 466 F.3d 1255, 1262 (11th Cir. 2006). The Complaint satisfies this requirement. *See* §V (detailing time, place, and content of each misstatement and omission); ¶¶114, 132, 143, 157, 174, 186, 204, 208, 223, 245 (why it was misleading); §IV.B-F (why the information was material). At this stage, nothing more is required.

---

[3]   To state a claim for securities fraud under Section 10(b) of the Exchange Act and SEC Rule 10b-5, a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant [falsity]; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011).

[4]   Plaintiff respectfully requests that the Court strike and/or disregard Defendants' unauthorized and extensive charts (Exs. 4, 9) spanning 100 pages, because they improperly seek to view statements in isolation and also circumvent the 25-page briefing limit. *See, e.g.*, *Jiangchen v. Rentech, Inc*., 2017 WL 10363990, at *4 (C.D. Cal. Nov. 20, 2017) (granting motion to strike extraneous chart of "false and misleading statements").

## 1.    Aaron's and Progressive's Financial Performance

Defendants' material misstatements and omissions regarding Aaron's and Progressive's reported financial metrics and "record" financial performance[5] gave investors the misleading impression of Aaron's continuous "growth" despite declines at AB.[6] Defendants further misleadingly attributed "increased" bad debt expense to standard business practices like "invoice mix."[7] These statements are actionable because Defendants engaged in **undisputed**[8] predatory practices that were not only illegal but also: (i) artificially inflated Progressive's, and consequently Aaron's, financial metrics; (ii) increased Aaron's bad debt; and (iii) subjected Aaron's to further FTC scrutiny which negatively impacted its financial performance.[9] *FindWhat*, 658 F.3d at 1306 (statements actionable that "conveyed to

---

[5]    *See, e.g.*, ¶¶86, 113, 117, 120, 134, 136-137, 139, 145-146, 148, 160, 162, 168, 177, 188-190, 205, 210, 212, 225, 235, 237.

[6]    *See, e.g.*, ¶¶114, 132(a), 143(a), 157(a), 174(a), 186(a), 204(a), 208(a), 223(a).

[7]    *See, e.g.*, ¶¶76, 88, 99, 120, 132(e), 165, 174(e), 180, 186(d).

[8]    Notably, Defendants **do not** dispute that they engaged in the improper conduct alleged in the Complaint. Defendants merely interject an inappropriate factual dispute as to whether their conduct violated the FTC Act. Mem. at 14-15, 16 n.15. Not only is this improper at the pleadings stage, but their argument ignores that the FTC "determined" Aaron's "violated" the FTC Act. ¶¶21, 105; Exs. A-B; *Abrams v. MiMedx Grp., Inc.*, 37 F. Supp. 3d 1271, 1274 (N.D. Ga. 2014) (denying motion to dismiss where "[defendant's] characterizations of the Plaintiffs' allegations do not capture the extent of the misrepresentation described in the amended complaint").

[9]    §IV.D.3, E; Exs. A-F.

the public a false impression").

Defendants defend these misstatements as accurate. Mem. at 12-15. But even a literally true statement can be misleading when viewed in context. *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 187-90 (2015). "[E]ven absent a duty to speak, a party who discloses material facts in connection with securities transactions assumes a duty to speak fully and truthfully on those subjects." *FindWhat*, 658 F.3d at 1305. Defendants putting the source of Aaron's revenues, growth, and bad debt expense at play, and elaborating to analysts about their successful stewardship of the Company, was misleading because they concealed that Defendants' deceptive conduct inflated important financial metrics, minimized negative disclosures that should have otherwise occurred, and increased risk to unsuspecting investors. §IV.D.3; ¶¶113-114;[10] *Plumbers & Pipefitters Nat'l. Pension Fund v. Davis*, 2020 WL 1877821, at *9 (S.D.N.Y. Apr. 14, 2020) (where

---

[10] To that end, Defendants' contention that they were not obligated to "accuse" themselves of "wrongdoing" misses the point, and the cases they rely upon are totally irrelevant to the pleaded fraud. Mem. at 13. Also, given Plaintiff's particularized and undisputed allegations, Defendants' reliance on cases rejecting falsity allegations based on a failure to disclose improperly obtained revenue is inapposite. Mem. at 13. *FindWhat*, 658 F.3d at 1306 (finding general statements about company revenue with no ties to a specific segment engaging in improper conduct or its company-wide effect inactionable); *In re Mirant Corp. Sec. Litig.*, 2009 WL 48188, at *18 (N.D. Ga. Jan. 7, 2009) (statements inactionable where no specific financial data was alleged to be false and plaintiffs provided no "insight into" the law violated).

defendants "cited their strategy as a source of their success, they were obligated to tell the whole truth[,]" including "short-run sales tactics").[11] As such, whether Defendants entered into a "no admission" settlement is of no moment. *Bach v. Amedisys, Inc.*, 2016 WL 4443177, at *11 (M.D. La. Aug. 19, 2016) (finding "no . . . liability" DOJ settlement was of "no relevance" in securities fraud action).[12]

### 2.    AB's Return to "Sustainable Growth"

Defendants gave investors the false impression that AB's initiatives would return AB to "sustainable growth" and profitability "over the long term,"[13] concealing that while the initiatives may have resulted in a short-term buoying of AB's performance, AB's long-term decline existed – even absent their illicit conduct. *See* §IV.D.3, E; ¶¶132(c), 157(c), 186(c), 204(c), 245(b). AB's decline since 2013, poor 4Q19 and FY19 results and 2020 outlook, concessions of reduced

---

[11] *See also Steiner v. MedQuist Inc.*, 2006 WL 2827740, at *16 (D.N.J. Sept. 29, 2006) (statement that "put the source of . . . revenue at issue and, therefore, the Company's failure to disclose a major source of that revenue – the improper billing scheme – was misleading").

[12] *See also City of Sunrise Gen. Emps.' Ret. Plan v. FleetCor Tech. Inc.*, 2018 WL 4293143, at *7 (N.D. Ga. May 15, 2018) (rejecting contention that a "misrepresentation must separately violate some statutory or regulatory scheme").

[13] *See, e.g.*, ¶¶86, 91, 95, 118, 121-122, 135-136, 138-139, 147-149, 160, 163-164, 178-179, 188-189, 192-193, 195, 200, 213-214, 220, 225, 234-235, 239-242. Plaintiff does not allege that Defendants concealed AB's growth declines. Mem. at 17. Instead, Plaintiff asserts that Defendants' misstatements (and reassurances) gave the false impression that AB's initiatives would sufficiently counteract competition and declining growth and return AB to "sustainable growth." ¶¶82-83, 132(c).

AB investments, and post-Class Period events, like AB's "fully impaired" goodwill, demonstrate falsity. ¶¶248, 258, 264-270. *See Emps. Ret. Sys. of the P.R. Elec. Power Auth. v. Conduent Inc.*, 2020 WL 3026536, at \*5 (D.N.J. June 5, 2020) (statements giving "the misleading impression" that company would achieve profitable growth "based on its progress with . . . Strategic Transformation" were actionable); *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 183 (S.D.N.Y. 2010) (post-class period admissions establish falsity).[14]

Defendants' misstatements also gave investors the false impression that Aaron's store closures resulted from Defendants' "restructuring" while concealing they were part of Aaron's **undisputed** anti-competitive conduct.[15] *In re Flowers Foods, Inc. Sec. Litig.*, 2018 WL 1558558, at \*9 (M.D. Ga. Mar. 23, 2018) ("Defendants did voluntarily tout the benefits of the . . . model and . . . their failure to disclose known material problems with that model was materially misleading.").[16]

---

[14] *See also Davis*, 2020 WL 1877821, at \*9 (statements regarding "fundamental growth drivers" and a "well-defined strategy" to gain market share actionable); *In re Enzymotec Sec. Litig.*, 2015 WL 8784065, at \*13 (D.N.J. Dec. 15, 2015) (statements regarding "sustainable" nature of business actionable); *KBC Asset Mgmt. NV v. 3D Sys. Corp.*, 2016 WL 3981236, at \*4-5 (D.S.C. July 25, 2016).

[15] *See* §IV.D.2, E; ¶¶119, 123, 131, 132(b), 139, 141, 143(b), 154, 157(b), 167, 171, 174(b), 179, 185, 186(b), 194, 201, 204(b), 206, 208(b), 215-216, 221, 223(b).

[16] *See also In re Henry Schein, Inc. Sec. Litig.*, 2019 WL 8638851, at \*15 (E.D.N.Y. Sept. 27, 2019) (defendant's omission of "a material basis for the company's

Far from hindsight (Mem. at 17-18), Plaintiff appropriately relies on the misrepresentations and omissions of then occurring ***undisputed*** improper conduct, Defendants' admissions, and post-Class Period events to provide specific facts existing at the time of the misstatements that triggered a duty to disclose. *Infra* §III.B; *In re Towne Servs., Inc. Sec. Litig.*, 184 F. Supp. 2d 1308, 1322 (N.D. Ga. 2001) (finding "an existing problem at the time the statements and omissions were made renders the no-hindsight cases inapplicable").[17]

### 3.    Compliance and Customer Service Statements

Defendants also made material misstatements distinguishing Aaron's from competitors based on its "compliance" with laws and "superior" consumer service. *See, e.g.*, ¶¶87, 127-130, 140, 150. When made, Defendants were operating two illegal schemes that minimized price and quality competition and deceived consumers into paying exorbitant prices.[18] [19] Because the statements emphasized

---

achievements . . . alleged collusion with its competitors" actionable); *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2017 WL 1658822, at *3, *11 (D.N.J. Apr. 28, 2017).

[17] *See also In re Paincare Holdings Sec. Litig.*, 541 F. Supp. 2d 1283, 1291 n.7 (M.D. Fla. 2008); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 254 (5th Cir. 2009) (reliance on post-class period facts "does not amount to fraud-by-hindsight").

[18] *See, e.g.*, ¶¶62-111, 132(d), (f), 143(d), 157(d), 174(d), (f), 186(e)-(f), 204(d)-(e), 208(c), 223(d)-(e), 245(c)-(d); Ex. E.

[19] Defendants baldly assert that Plaintiff cannot allege facts from the FTC's complaint against Progressive. Mem. at 19. Not so. It is common practice to consider facts and evidence detailed in a government action or another civil lawsuit. *See, e.g.*, *In re Carter's, Inc. Sec. Litig.*, 2012 WL 3715241, at *4 (N.D. Ga. Aug. 28, 2012);

"the importance of compliance and customer satisfaction as a competitive strength[,]" they are actionable. *Keippel v. Health Ins. Innovations, Inc.*, 2019 WL 5698329, at \*7 (M.D. Fla. Nov. 4, 2019); *Flowers*, 2018 WL 1558558, at \*9.[20]

## B.    Defendants' Duty to Disclose Material Omitted Information

An omission is actionable when the defendant is subject to a duty to disclose omitted facts. *FindWhat*, 658 F.3d at 1299, 1305. Here, disclosure was "necessary to make . . . statements made, in the light of the circumstances under which they were made, not misleading." *Matrixx*, 563 U.S. at 44. Defendants ignore (Mem. at 13-16, 19-20) that by repeatedly speaking about these material topics, they had a duty to fully disclose material contrary facts related to such matters. *FindWhat*, 658 F.3d at 1305. For example, by touting the "benefits" of AB's initiatives, Defendants had a duty to disclose that the initiatives (no matter how successful) were predicated on unsustainable and illicit anti-competitive practices, and incapable of fully offsetting demand declines necessary for AB's long-term profitability. ¶132(c).

---

*Shah v. Zimmer Biomet Holdings, Inc.*, 2019 WL 762510, at \*8 (N.D. Ind. Feb. 20, 2019); *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 768 n.24 (S.D.N.Y. 2012).

[20]   Aaron's SOX certifications were also false because, as demonstrated by Aaron's conceded Item 303 violation (Mem. at 19; §VII), they failed to disclose material information. *See, e.g.*, ¶¶87, 91, 96, 125-132, 140-141; *MAZ Partners LP v. First Choice Healthcare Sols., Inc.*, 2020 WL 1072582, at \*4-5 (M.D. Fla. Feb. 14, 2020); *In re Ebix, Inc. Sec. Litig.*, 898 F. Supp. 2d 1325, 1333, 1343-44 (N.D. Ga. 2012) (Item 303 violation bolsters defendants' duty to disclose).

The Complaint also identifies numerous omitted facts "known or knowable" to Defendants that they had a duty to disclose and rendered Defendants' statements misleading because Defendants "lacked the basis for making those statements that a reasonable investor would expect." *Omnicare*, 575 U.S. at 196; §V (specifying statements giving rise to liability based on a duty to disclose); §VII (specifying Item 303 liability); *supra* n.20; *FleetCor*, 2018 WL 4293143, at \*9 (defendants voluntarily misrepresenting that FleetCor's cards were "fee free," when they were not, "created a scheme that would cause fraudulent fees to be charged" actionable).

### C.    The Misstatements and Omissions Were Material, Not Puffery or Inactionable Opinions

Materiality is satisfied when there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Matrixx*, 563 U.S. at 38. Materiality is an objective, fact-specific determination. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 467 (2013). As such, materiality is typically "resolved by the factfinder." *Luczak v. Nat'l Beverage Corp.*, 812 F. App'x 915, 924 (11th Cir. 2020) (*per curiam*).

Defendants' misstatements and omissions are material as they concerned: (i) illicit conduct at Aaron's largest segments, impacting "critical" customers; (ii) efforts to revive Aaron's "legacy" segment; and (iii) Aaron's financial metrics,

- 14 -

growth, and strategies, which Defendants emphasized nearly every quarter. *See, e.g.*, §IV.B-D; *Freudenberg*, 712 F. Supp. 2d at 181 (statements concerning a "segment" that "play[s] a significant role" in the company's "profitability" are material).[21]

Materiality is further supported by the significant stock price declines (§§IV.F, IX) and securities analysts' reactions (¶¶110, 156, 173, 244, 262) to the corrective disclosures. *In re BellSouth Corp. Sec. Litig.*, 355 F. Supp. 2d 1350, 1371 (N.D. Ga. 2005) (disclosure's effect on stock price supports materiality); *In re Sci.-Atlanta, Inc. Sec. Litig.*, 239 F. Supp. 2d 1351, 1361 n.6 (N.D. Ga. 2002) ("analyst's comparison" supports materiality), *aff'd sub nom.* 374 F.3d 1015 (11th Cir. 2004).

Defendants' portrayal of the misstatements as "puffery," based on truncated quotes (Mem. at 9-10, 18 n.16, Ex. 9), contradicts the fact-based, contextual review of materiality mandated by the Supreme Court. *Matrixx*, 563 U.S. at 38. Many of the statements were tied to concrete, verifiable financial metrics such as revenue, "leases per door," and "specific strategies" to poise Aaron's growth. *See, e.g.*, ¶¶136, 139, 190; *Luczak*, 812 F. App'x at 925 (statements citing "specific strategies and metrics" are not puffery). Other supposed "optimistic" statements regarding customer service and legal compliance conveyed facts about the effectiveness and legitimacy of

---

[21] *Silverman v. Motorola, Inc.*, 798 F. Supp. 2d 954, 966-67 (N.D. Ill. 2011) (statements regarding performance of "flagship" business are material).

Defendants' business model (at a time of intense competition and ongoing government scrutiny) which were contradicted by then-known (by Defendants) undisclosed facts. *Keippel*, 2019 WL 5698329, at *7 (compliance and customer service statements not puffery).[22]

Defendants next advance the inappropriate factual dispute that the amount of the FTC penalty, consumer complaints, and anti-competitive swap agreements (when contrasted against Aaron's total revenues, "transactions," and "overall compliant rate")[23] makes statements regarding these topics immaterial. Mem. at 15-18. But materiality is not necessarily tied to a specific fraction of a company's profits. *Matrixx*, 563 U.S. at 43-45 (rejecting quantitative materiality test); *SEC v. City of Miami*, 988 F. Supp. 2d 1343, 1359 (S.D. Fla. 2013); §§IV.F, IX.

Defendants' improper "truth on the market" defense, that the market

---

[22] *See also Owl Creek I, L.P. v. Ocwen Fin. Corp.*, 2018 WL 4844019, at *8 (S.D. Fla. Oct. 4, 2018) (statement that company had been "careful to assure . . . strong compliance" is a "verifiable and specific factual statement" and material because defendants are in a "heavily regulated industry"). In *Carvelli v. Ocwen Fin. Corp.* (Mem. at 10), the court found "promises about improvements and progress" of regulatory compliance were nonactionable because the company had already "addressed openly" its lack of regulatory compliance (unlike Defendants here, who falsely claimed FTC compliance). 934 F.3d 1307, 1321-22 (11th Cir. 2019).

[23] Defendants' request that the Court take judicial notice of statements outside of the Complaint for their "truth" is contrary to binding precedent and must be rejected. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 n.15 (11th Cir. 1999) (SEC documents should not be judicially noticed "to prove the truth of [their] contents.").

understood Aaron's predatory practices increased bad debt, and that AB's growth would continue to decline, should also be rejected. Mem. at 13-14, 16 n.15, 17. A truth-on-the market defense is "rarely . . . appropriate" for "dismissing a § 10(b) complaint." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 (2d Cir. 2000). Defendants **must prove** that the truth was conveyed with sufficient "intensity" to counter-act misleading information. *Id.* None of Defendants' disclosures sufficiently addressed or cured the specific misstatements or material omissions, and their false reassurances prevented investors from learning the truth.[24] *See infra* §III.D; *FindWhat*, 658 F.3d at 1305 (defendants "may not deal in half-truths"); *Bellocco v. Curd*, 2005 WL 2675022, at *2 (M.D. Fla. Oct. 20, 2005) (disclosures "in conjunction with Defendants' corporate optimism" do not put the market on "actual notice of fraud"); *In re Unicapital Corp. Sec. Litig.*, 149 F. Supp. 2d 1353, 1373 (S.D. Fla. 2001).

Defendants' statements are also not inactionable opinions. Mem. at 10-11, 19, Ex. 9. A false statement starting with "we believe" "remain[s] perfectly capable of misleading investors." *Omnicare*, 575 U.S. at 193. Many of the statements are not opinions, but factual statements "expressing certainty" about present and historical

---

[24] *See, e.g.*, ¶¶88, 96, 100, 102, 132(e), 152-153, 170, 174(e), 182, 186(d), 197; *infra* §III.D.

matters, including Aaron's "progress" on initiatives, and "compliance." *Id.* at 182-83. Even if opinions, Plaintiff identified material omissions that "conflict with what a reasonable investor would take from the statement itself[.]" *Id.* at 189; *supra* §III.B.

### D.     The Safe Harbor Affords No Protection Here

The statutory safe harbor, which only protects forward-looking statements accompanied by meaningful cautionary language, is inapplicable here for four reasons. ¶¶337-341; *FindWhat*, 658 F.3d at 1298. *First*, the safe harbor does not apply to misstatements of historical or current fact. *Id.* at 1299. This includes statements about Aaron's financial results and growth, regulatory compliance, customer-centric business model, results of AB's initiatives, and reasons for store closures. *Supra* §III.A.1-A.3. Defendants' portrayal of these statements as forward-looking "projections" is off the mark. *See* Mem. at 6-8 (citing "initiatives *are driving* stronger financial performance" and "leading indicators *are positive*").[25]

*Second*, the safe harbor does not apply to Defendants' multiple omissions of material fact, which cannot be forward-looking, and, therefore, do not qualify for

---

[25] Defendants erroneously claim that in the Eleventh Circuit, "[a]ny present-tense or past-tense components of the challenged forward-looking statements are protected." Mem. at 7. Not so. In *Ocwen*, repeatedly cited by Defendants, the court made clear that a present tense statement "appended to a forward-looking clause" may *only* be protected if it is "an inextricable part, rather than an easily severed ancillary, of a forward-looking statement." 934 F.3d at 1328-29. And *Ocwen* specifically found that the compliance portion of a statement was *not* protected. *Id.*

safe harbor protection. *See* ¶340; *supra* §III.C; *SEC v. Revolutions Med. Corp.*, 2015 WL 11199068, at *4 (N.D. Ga. Apr. 3, 2015) (an "actionable omission . . . cannot be sanitized by forward-looking statements").[26] *Third*, even if Defendants' misstatements were forward-looking, the safe harbor cannot apply because they were made with actual knowledge of their falsity. ¶341; *infra* §III.E; *Primavera Inv'rs v. Liquidmetal Tech., Inc.*, 403 F. Supp. 2d 1151, 1157 (M.D. Fla. 2005).

*Fourth*, Defendants' cautionary language was insufficient because it was boilerplate, vague, and the warned risks had already transpired. The warnings must have been "specifically tailored . . . to the risks Plaintiff argues existed." *Flowers*, 2018 WL 1558558, at *11. "[T]o caution that it is possible for . . . unfavorable events to happen when they have already occurred is deceit." *SEC v. Merch. Capital, LLC*, 483 F.3d 747, 769 (11th Cir. 2007). The adequacy of cautionary language "is a fact-intensive inquiry" better resolved "after discovery[.]" *In re HD Supply Holdings, Inc. Sec. Litig.*, 341 F. Supp. 3d 1342, 1359 (N.D. Ga. 2018).

Defendants fail to meet this burden (Mem. at 8-9, Ex. 4) because their general "cautionary" language was substantially similar in each of their Forms 10-K "Risk

---

[26]  *See also In re Premiere Tech. Inc. Sec. Litig.*, 2000 WL 33231639, at *17 (N.D. Ga. Dec. 8, 2000) ("Statements and omissions of past and current circumstances cannot be cured by reference to future difficulties and undetected problems."); *Towne*, 184 F. Supp. 2d at 1320-21.

Factors" related to regulation and compliance (applicable to any company), AB's "challenges," and strategy execution.[27] ¶¶338-340; *Flowers*, 2018 WL 1558558, at *11 (cautionary language was insufficiently tailored where it was repeated in company's "10-Ks . . . despite the new information [it] received"); *FindWhat*, 658 F.3d at 1299 (holding "general warnings about risks" were not "specifically tailored").[28] The generic warnings were false and misleading because the "risks" had already materialized. ¶¶62, 67, 82, 341; *supra* §III.B; *Merch. Capital*, 483 F.3d at 769 ("optimistic statements" were "misleading" where "unfavorable events had already occurred").

### E.   Plaintiff Adequately Pleads Defendants' Scienter

A court must accept Plaintiff's scienter allegations as true and "assess all the allegations holistically." *Tellabs*, 551 U.S. at 326. Whether scienter is met, "boils down to whether a reasonable person would infer that there was at least a fifty-fifty

---

[27] *See* §XI; *see also* Mem., Ex. 30 at 14-16, Ex. 8 at 14-17, Ex. 1 at 14-17, Ex. 11 at 14-18; *see also* Mem. Ex. 4 (acknowledging that "cautionary language" in Aaron's earnings calls, earnings releases, and Forms 10-Q is "substantially similar").

[28] The safe harbor similarly does not apply to Defendants' oral statements on conference calls (*see, e.g.*, ¶¶88-89, 91, 98), because "[t]he cautionary statements included at the beginning of each conference call were brief and generic" and failed to identify even a "single important factor that could lead to different results." *In re Salix Pharms., Ltd.*, 2016 WL 1629341, at *11 (S.D.N.Y. Apr. 22, 2016); 15 U.S.C. §78u-5(c)(2)(B)(ii) (requiring an "accompanying oral statement" to identify "the document, or portion thereof, that contains the additional information about those factors relating to the forward-looking statement").

chance" that defendants knew, or were severely reckless in not knowing, about the alleged fraud. *Monroe Cnty. Emps. Ret. Sys. v. Southern Co.*, 2018 WL 1558577, at *32 (N.D. Ga. Mar. 29, 2018). Scienter is a "mixed question[] . . . that must typically be resolved by the factfinder." *Luczak*, 812 F. App'x at 924. Plaintiff's particularized allegations demonstrate numerous *indicia* that demonstrate that Defendants' statements were made with knowledge or severe recklessness (¶¶33-36, 282-315) of their falsity. Defendants' claim of "generalized" allegations[29] and attacks on inferences in isolation, while ignoring others, is improper. Mem. at 20-25.

That AB and Progressive collectively accounted for 98% of Aaron's revenues as its "core" and growth "driv[er]" supports scienter. ¶¶283-284; *supra* §§II, III.C; *In re Immucor Inc. Sec. Litig.*, 2006 WL 3000133, at *18 (N.D. Ga. Oct. 4, 2006) ("Knowledge of facts relating to the [company's] core functions [is] imputed to a

---

[29] Defendants' reliance on *Mogensen v. Body Central Corp.* and *Veal v. LendingClub Corp.* to support their contention that Plaintiff's allegations lack particularity is unavailing. Mem. at 21. Unlike *Mogensen*, Plaintiff alleged more than "generalized" allegations of an "internal reporting system" and management's "active engagement." 15 F. Supp. 3d 1191, 1220 (M.D. Fla. 2014). And far from *LendingClub*, Plaintiff's allegations detail the "who, when, what" of Defendants' access to material information. 423 F. Supp. 3d 785, 816 (N.D. Cal. 2019). Here, Plaintiff alleged knowledge (or severe recklessness) based on numerous *indicia*, such as Defendants' "cooperation" with the FTC, engaging in and monitoring the issues that were the subject matter of the fraud, and Woodley's participation "directly in" the illegal practices. ¶¶282-315.

company's key officers.").[30] Defendants have no argument to the contrary.

Next, taken together, the Individual Defendants' senior positions and experience (¶¶28-31, 33-36, 292-294), and admitted close monitoring, "strategic review" of, and access to highly relevant information regarding financial metrics, strategies, and prospects (including store closures, "initiatives," "training," and consumer complaints) (¶¶295-300) further bolster scienter. *Primavera*, 403 F. Supp. 2d at 1158 (finding that access to information by virtue of their executive positions and an opportunity to prevent misleading statements supports scienter).[31]

The Individual Defendants' specific statements about unprecedented growth, AB's initiatives' success, legal compliance, superior customer service, and "cooperation" with the FTC regarding the CIDs, to investors and in response to analysts, further strengthen scienter. *Supra* §III.A.1-A.3; *Inst'l. Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 269 (3d Cir. 2009) ("the most powerful evidence of scienter is the content and context of [defendant's] statements").[32] As Aaron's designated

---

[30] *See also Thorpe v. Walter Inv. Mgmt., Corp.*, 111 F. Supp. 3d 1336, 1376 (S.D. Fla. 2015); *In re Clarus Corp. Sec. Litig.*, 201 F. Supp. 2d 1244, 1251 (N.D. Ga. 2002).

[31] *See also HD Supply*, 341 F. Supp. 3d at 1364.

[32] *See also In re Freidman's, Inc. Sec. Litig.*, 385 F. Supp. 2d 1345, 1362 (N.D. Ga. 2005) (scienter alleged against senior company official who made false statements "when the alleged [fraud] was occurring"); *In re Sensormatic Elec. Corp. Sec. Litig.*, 2002 WL 1352427, at *6 (S.D. Fla. June 10, 2002).

speakers about these material matters, it was "exceedingly unlikely" that they were "unaware of the problems" involving them. *Makor Issues & Rights, Ltd., Tellabs Inc.*, 513 F.3d 702, 711 (7th Cir. 2008).

Scienter is further bolstered by the FTC's findings and "statement[s]" that Aaron's violated the FTC Act, had "knowledge of widespread consumer confusion" (Ex. E at 18-20), and Woodley "participated directly in the illegal practices or had authority to control them." ¶¶62-111, 286-291. *Eastwood Enters., LLC v. Farha*, 2009 WL 3157668, at *4 (M.D. Fla. Sept. 28, 2009) ("government investigations are relevant and provide notice of possible fraud").[33] The magnitude of Aaron's losses from Defendants' misrepresentations, including a 279.8% EPS decline (¶¶107-108), disappointing outlook (¶262), and a 42% stock drop, also supports scienter (¶¶111, 263, 303). *Okla. Firefighters Pension & Ret. Sys. v. Lexmark*, 367 F. Supp. 3d 16, 38 (S.D.N.Y. 2019) ("the magnitude of the aftershock" supports scienter); *Local 703 v. Regions Fin Corp.*, 2011 WL 12855820, at *8 (N.D. Ala. June 7, 2011).[34]

Defendants' motive, including $13 million in insider sales, further bolsters

---

[33] *See also Epstein v. World Acceptance Corp.*, 203 F. Supp. 3d 655, 671-72 (D.S.C. 2016) (government scrutiny, a CID, and receipt of NORA letter buttress scienter); *Utesch v. Lannett Co.*, 385 F. Supp. 3d 408, 423 (E.D. Pa. 2019).

[34] Defendants' signed SOX Certifications (*supra* n.20) also support scienter. Mem. at 22 (citing *Garfield*, 466 F.3d at 1266-67) (SOX certifications support scienter where defendants "had reason to know, or should have suspected [misstatements] due to . . . red flags"). ¶¶284, 286, 289, 296-297, 299.

scienter. *Tellabs*, 551 U.S. at 310, 325 ("personal financial gain" weighs "heavily in favor of a scienter"); *Rosky v. Farha*, 2009 WL 3853592, at *7 (M.D. Fla. Mar. 30, 2009).[35] ¶¶304-315. Defendants' sales were suspiciously timed, occurring prior to the July 2018 CIDs, and with the majority occurring thereafter. *Id.*; *Abrams*, 37 F. Supp. 3d at 1278 ("substantial" sales after receipt of FDA report supports scienter).

Defendants' 10b5-1 trading plans do not negate scienter because they were adopted during the Class Period (or a day before) and either: (i) just prior to the July 2018 CIDs; or (ii) after FTC "cooperat[ion]."[36] ¶304 n.10; *Freudenberg*, 712 F. Supp. 2d at 201 (plans adopted during the Class Period "are not a cognizable defense to scienter"); *Rosky*, 2009 WL 3853592, at *7 (insider sales five months prior to federal raid support scienter). Further, there is no indication that the plans were properly entered into, abided by, not amended, or that trades were in accordance with them, as required to establish the defense. 17 CFR §240.10b-5(c).

Defendants' competing inference regarding their "belie[f]" of the legality of

---

[35] *See also FleetCor*, 2018 WL 4293143, at *12 (finding stock sales probative of scienter); *SEC v. Adler*, 137 F.3d 1325, 1341 (11th Cir. 1998) (same).

[36] Defendants' reliance on authority finding that trades made pursuant to a trading plan, in unlike circumstances, does not negate scienter. Mem. at 23-24; *see, e.g.*, *Mogensen*, 15 F. Supp. 3d at 1222 (lack of detail on prior sales and a trading plan that was not adopted during the class period did not infer scienter); *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1067 n.11 (9th Cir. 2008) (sales pursuant to a pre-determined plan and prior trading patterns unrelated to the timing or substance of DOE investigation failed to support scienter).

their conduct ignores Plaintiff's allegations of the illicit practices themselves, Defendants' omission of them, and the attribution of Aaron's successes to non-fraudulent conduct. Mem. at 25. At best, Defendants raise a factual dispute that is no more compelling than an inference of fraud and must be resolved in Plaintiff's favor. *See Monroe*, 2018 WL 1558577, at *32.

Because Plaintiff adequately pleads scienter as to the Individual Defendants, Aaron's scienter is also established. *See Grand Lodge of Pa. v. Peters*, 550 F. Supp. 2d 1363, 1370 (M.D. Fla. 2008) ("scienter alleged on the part of high level employees of a company" establishes corporate scienter).[37] Lastly, Plaintiff has adequately pled Defendants' primary violations and a control person violation under Section 20(a). ¶¶33-36, 354-358. *Flowers*, 2018 WL 1558558, at *21.

## IV. CONCLUSION[38]

For the reasons described herein, Defendants' motion should be denied.

---

[37] *See also In re Faro Tech. Sec. Litig.*, 534 F. Supp. 2d 1248, 1263 (M.D. Fla. 2007) (adopting report and recommendation) (finding corporate scienter exists where, as here "the wrongdoing alleged was not a single act of a low-level employee, but rather, an ongoing method of doing business").

[38] If the motion is granted in whole or in part, Plaintiff respectfully requests leave to amend. *See* Fed. R. Civ. P. 15(a)(2) (leave to amend should be freely given); *In re Sunterra Corp. Sec. Litig.*, 199 F. Supp. 2d 1308, 1339 (M.D. Fla. 2002).

DATED:  October 16, 2020

ROBBINS GELLER RUDMAN
  & DOWD LLP


*s/ Jack Reise*

JACK REISE

JACK REISE (admitted *pro hac vice*)
STEPHEN R. ASTLEY
(admitted *pro hac vice*)
KATHLEEN DOUGLAS
(admitted *pro hac vice*)
BAILIE L. HEIKKINEN
(admitted *pro hac vice*)
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
jreise@rgrdlaw.com
sastley@rgrdlaw.com
kdouglas@rgrdlaw.com
bheikkinen@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ARTHUR C. LEAHY
(admitted *pro hac vice*)
CAROLINE M. ROBERT
(admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
artl@rgrdlaw.com
crobert@rgrdlaw.com

*Lead Counsel for Lead Plaintiff and the
Putative Class*

- 26 -

HERMAN JONES LLP
JOHN C. HERMAN
  (Georgia Bar No. 348370)
CARLTON R. JONES
  (Georgia Bar No. 940540)
3424 Peachtree Road, N.E., Suite 1650
Atlanta, GA  30326
Telephone:  404/504-6555
404/504-6501 (fax)
jherman@hermanjones.com
cjones@hermanjones.com

*Local Counsel*

- 28 -

## <u>LOCAL RULE 7.1(D) CERTIFICATION</u>

By signature below, counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1.

*s/ Jack Reise*
JACK REISE

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 16, 2020, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, and a copy of the foregoing pleading has been electronically mailed to all attorneys of record.



*s/ Jack Reise*

JACK REISE